J-A21043-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DAVON HAYES | |
| Appellant | No. 1919 WDA 2016 |

Appeal from the PCRA Order entered November 16, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No: CP-02-CR-0014894-2003; CP-02-CR-0001018-2004

BEFORE:  BENDER, P.J.E., OLSON, and STABILE, JJ.

MEMORANDUM BY STABILE, J.:                    **FILED  NOVEMBER 9, 2017**

Appellant, Davon Hayes, appeals *pro se* from the November 16, 2016 order entered by the Court of Common Pleas of Allegheny County, dismissing as untimely his petition for collateral relief pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

The underlying relevant facts can be summarized as follows.[1] Appellant confessed to being one of three persons who robbed a store in the East Liberty neighborhood of Pittsburgh on October 9, 2003.  William

---

[1] For more details regarding the factual background and prior procedural history, **see Commonwealth v. Hayes**, No. 1094 WDA 2005, unpublished memorandum (Pa. Super. filed October 30, 2007) (direct appeal); **Commonwealth v. Hayes**, No. 1794 WDA 2009, unpublished memorandum (Pa. Super. filed October 13, 2010) (first PCRA petition); and **Commonwealth v. Hayes**, No. 1025 WDA 2011, unpublished memorandum (Pa. Super. filed July 10, 2012) (second PCRA petition).

Anderson, a clerk at the store, was shot to death during the robbery. Greg Herring and Victor Starr were Appellant's co-conspirators. Following a bench trial, Appellant was convicted of second degree murder, robbery, and conspiracy. On May 23, 2005, Appellant was sentenced to life in prison for the murder conviction and a concurrent sentence of five to ten years' imprisonment on the robbery conviction. No additional sentence was imposed on the conspiracy conviction.

Appellant appealed his judgment of sentence, which we affirmed. On further appeal, the Pennsylvania Supreme Court remanded to this Court to consider whether Appellant's confession should have been suppressed because it was allegedly obtained in violation of **Miranda**.[2] On remand, we affirmed the judgment of sentence, concluding Appellant's confession was knowingly and voluntarily made. Our Supreme Court denied Appellant's petition for allowance of appeal.

Appellant then filed his first PCRA petition, which the PCRA court denied without holding a hearing. On appeal, we affirmed the order denying his petition. Subsequently, Appellant filed his second PCRA petition, which the PCRA court denied. We affirmed the order denying his second petition.

Appellant filed the instant PCRA petition, his third, on October 7, 2016. The PCRA court denied it on November 16, 2016. This appeal followed.

---

[2] **Miranda v. Arizona**, 384 U.S. 436 (1966).

Appellant acknowledges that the instant PCRA petition is facially untimely. However, Appellant alleges it meets one of the exceptions to the one-year time bar. Appellant argues the instant PCRA petition is timely based on facts previously unknown to Appellant and which could not have been ascertained through due diligence. Specifically, Appellant argues the previously unknown facts are Darnell Clark and Richard Peterson's statements,[3] and the affidavit of Antoine Lester.[4] Upon review, we conclude Appellant failed to prove he met the exception alleged. *See* 42 Pa.C.S.A. § 9545(b)(1)(ii).

"[A]n appellate court reviews the PCRA court's findings of fact to determine whether they are supported by the record, and reviews its conclusions of law to determine whether they are free from legal error." ***Commonwealth v. Spotz***, 84 A.3d 294, 311 (Pa. 2014). All PCRA petitions, "including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final" unless an exception to timeliness applies. 42 Pa.C.S.A. § 9545(b)(1). "The PCRA's time restrictions are jurisdictional in nature. Thus, [i]f a PCRA petition is

---

[3] Clark and Peterson testified at Herring's trial. Neither witness implicated Appellant in the October 9, 2003 shooting.

[4] Appellant "received an affidavit by Antoine Lester dated August 24th of 2016." Appellant's Brief at 16. The content of the affidavit is described below. Lester's affidavit was attached as an appendix (Appendix B, Part 1) to Appellant's third PCRA petition. Appellant also attached to the petition an affidavit from Frederick Miller, 9/30/16 (Appendix B, Part 3).

untimely, neither this Court nor the [PCRA] court has jurisdiction over the petition. Without jurisdiction, we simply do not have the legal authority to address the substantive claims." ***Commonwealth v. Chester***, 895 A.2d 520, 522 (Pa. 2006) (first alteration in original) (internal citations and quotation marks omitted). As timeliness is separate and distinct from the merits of Appellant's underlying claims, we first determine whether this PCRA petition is timely filed. ***See Commonwealth v. Stokes***, 959 A.2d 306, 310 (Pa. 2008) (consideration of ***Brady*** claim separate from consideration of its timeliness).

At issue here is the timeliness exception set forth in Section 9545(b)(1)(ii). The exception requires a petitioner to plead and prove two components: 1) the facts upon which the claim was predicated were unknown, and (2) these unknown facts could not have been ascertained by the exercise of due diligence. ***See Commonwealth v. Burton***, 158 A.3d 618, 638 (Pa. 2017). Thus, a petitioner must explain why he could not have learned the new facts earlier with the exercise of due diligence. ***See Commonwealth v. Breakiron***, 781 A.2d 94, 98 (Pa. 2001). Due diligence demands the petitioner to take reasonable steps to protect his own interests. ***See Commonwealth v. Carr***, 768 A.2d 1164, 1168 (Pa. Super. 2001). This standard, however, does not require "perfect vigilance nor punctilious care, but rather it requires reasonable efforts by a petitioner, based on the particular circumstances, to uncover facts that may support a claim for collateral relief." ***Commonwealth v. Shiloh***, --- A.3d ---, 2017

WL 3932826, at *3 (Pa. Super. September 8, 2017) (citation omitted). Additionally, "[t]he focus of the exception is on [the] newly discovered *facts,* not on a newly discovered or newly willing source for previously known facts." *Commonwealth v. Marshall*, 947 A.2d 714, 720 (Pa. 2008) (emphasis in original) (citation omitted).

Finally, the exception to the PCRA's one-year time limit requires petitioners to file their PCRA petition within sixty days of the date the claim could have been presented. Thus, petitioners must plead and prove specific facts demonstrating their claim was raised within the sixty-day time frame of Section 9545(b)(1)(ii). *See* 42 Pa.C.S.A. § 9545(b)(2); *see also Commonwealth v. Hernandez*, 79 A.3d 649, 651-52 (Pa. Super. 2013).

Regarding Clark and Peterson's statements, Appellant alleges that he learned about them only after reviewing the transcripts of Herring's preliminary hearing and trial. Nowhere, however, does Appellant explain what, if anything, prevented him from pursuing the notes of testimony sooner, or even more fundamentally, when did he learn about Herring's trial.

Even if Appellant was incarcerated at the time Herring's trial took place, it does not mean that he did not know or that he could not have known (directly or through his attorneys) that Herring had been tried. Indeed, at one point, as he acknowledged, Appellant did in fact find out about Herring's trial by conducting research on Lexis while incarcerated. However, Appellant provided no indication as to when he learned of the trial.

Appellant also fails to mention that he was represented by counsel in connection with the direct appeal, the first PCRA petition, the second PCRA petition, and in a federal habeas corpus case. Appellant alleges that he sought the assistance of friends and relatives in order to find out about Herring's trial, Appellant's Brief in Response to Appellee's Brief at 6, but nowhere does he mention ever asking for assistance from any of the attorneys who assisted him throughout the proceedings. Any attorney, if asked, could have found out all relevant information about Herring's trial in a matter of few minutes.

Finally, and as importantly, Clark's failure to identify Appellant as being implicated in the shooting was known to Appellant since October 9, 2003. *See* Lester's Affidavit, 8/24/16, at 1-2, *infra*. What steps did Appellant take to contact Clark? Apparently, none. Thus, the record is clear Appellant failed to plead his or his prior counsel's due diligence. Accordingly, we conclude Herrings' transcripts do not qualify a newly-discovered fact under Section 9545(b)(1)(ii).

The other newly-discovered fact alleged by Appellant is Lester's affidavit.[5] Appellant argues he did not know Lester's identity, which, in

_____

[5] In relevant part, Lester's affidavit reads as follows:

> 1) On October 9, 2003 I was in Auburn Park with [Appellant], Tyru Smith, Miracle Smith, Princess Murphy and Jalynn Thomas[.] Prior to meeting with [Appellant], Tyru Smith, Miracle

*(Footnote Continued Next Page)*

Appellant's estimation, would show that he could not have pursued this route (*i.e.*, contacting Lester) any time sooner. The record, however, belies

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

> Smith and Jalynn Thomas[,] I was with [Appellant]'s [g]irlfriend Princess Murphy waiting on him to come to Auburn[.]
>
> 2) On October 9, 2003 approximately between 12 25 and 12 30 PM I watched [Appellant], Miracle Smith, Jalynn Thomas and Tyru Smith enter Auburn Park from East Liberty Boulevard[.]
>
> 3) After a brief period of time of sitting in Auburn Park, Wick [Greg Herring] and Vick [Victor Starr] came into Auburn from the Meadow Street Bridge along with a female I never seen before in Larimer[.]
>
> 4) A few hours later I seen a lot of cop cars and undercover cop cars arrive in Auburn Park and stop in front of the park that's in Auburn Park[.] [Appellant] Tyru Smith, Princess Murphy, Jalynn Thomas, Miracle Smith, [Greg Herring] and [Victor Starr], [t]he unknown black female and myself stood and watch as the cops jumped out and telling everybody not to move[.]
>
> 5) At this time I observed Darnell Clark pull up and walked to a detective and pointed and said it was [Greg Herring] and Vick [Victor Starr][.] The detective asked Darnell Clark if [Appellant] was another of the suspects he saw and Darnell Clark said[:] No I didn't see him I seen [Greg Herring] and Vick [Victor Starr][.] Then the detective let [Appellant] and Princess Murphy go along with myself, Tyru Smith, Miracle Smith, Jalynn Thomas and the unknown black female.
>
> 6) I was standing right next to Darnell Clark when he identified [Greg Herring] and Vick [Victor Starr] as the suspects involved in this case and telling the detectives that [Appellant] was not one of the suspects[.] I heard Darnell Clark make these statements prior to cops arresting [Greg Herring] and Vick [Victor Starr].

Antoine Lester's Affidavit, 8/24/16 at 1-2.

Appellant's assertions. A review of Lester's affidavit and the other affidavit attached to Appellant's third PCRA petition (Frederick Miller's affidavit) reveals that Lester's was indeed a "friend" of Appellant. Miller's Affidavit, 9/30/16, at 1. Thus, the record contradicts his allegation that he did not know the identity of Lester.

Even if Appellant did not know Lester's name on October 9, 2003, it is clear from Lester's affidavit that Appellant and Lester were socializing at Auburn Park just before their interaction with the police following the shooting. Accordingly, Appellant was aware of Lester since, at the very least, October 9, 2003 (date of shooting). Nowhere does Appellant explain why he (personally or through his counsel) did not attempt to identify or locate Lester sooner. More importantly, the affidavit shows Appellant was present at the time Clark told the officers Appellant was not involved in the shooting. It is unclear why Appellant did not pursue this avenue any time sooner. Appellant conveniently states he has no recollection spending time with Lester at Auburn Park on October 9, 2003, or being present when Clark, in response to the officers' questions, denied Appellant's involvement in the shooting. Appellant's Brief at 19-20. In the end, Appellant provides only bald allegations unsupported by facts or the record. Accordingly, we conclude Lester's affidavit does not qualify as a newly-discovered fact for purposes of Section 9545(b)(1)(ii).

Finally, we also note Appellant failed to file his third PCRA petition within 60 days from the discovery of the newly-discovered facts, as required

under Section 9545(b)(2). Miller, in his affidavit, stated that Appellant knew of Clark's statement as of June 26, 2016. Yet, Appellant filed the instant petition on October 7, 2016, well beyond the 60-day time restriction.

In his response to the Commonwealth's Brief, Appellant argues that Miller misstated the facts. Appellant explains that on June 26, 2016, he did not have Herring's transcripts so he could not have known of Clark's statement. However, Appellant's explanation is inconsistent with Miller's affidavit. Miller stated that he met with Appellant on June 26, 2016, and that on that occasion Appellant told Miller that Clark's "testimony would have been helpful to his case had he known about it." Miller's Affidavit, 9/30/16, at 1. Thus, regardless of the transcripts, Appellant knew as of June 26, 2016, that Clark exonerated Appellant from any involvement in the shooting. Yet, Appellant waited to file his third PCRA petition until October 7, 2016. The operative fact is when he learned of the newly-discovered fact, which is June 26, 2016, not when the source of the fact becomes available. ***Marshall***, ***supra***.

Because Appellant failed to satisfy the exception set forth in Section 9545(b)(1)(ii), we cannot review the merits of Appellant's contentions.

Accordingly, we affirm the order dismissing Appellant's petition as untimely, and deny Appellant's application for relief.[6]

Order affirmed. Appellant's application for relief denied.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  11/9/2017

---

[6] In his application for relief, Appellant sought to supplement the record with the transcript from the Herring's trial. Because we have no jurisdiction to entertain the instant petition, the application for relief is denied.